**PLAINTIFF FILING PRO SE PENDING SUBSTITUTION OF COUNSEL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

FILED

APR 0 6 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

KELLY JENKINS,

    Plaintiff,

v.

CACHE PUBLIC SCHOOLS,
INDEPENDENT SCHOOL
DISTRICT NO. 1,

    Defendant.

Case No.CIV-24-1175-JD

**PLAINTIFF'S EMERGENCY MOTION TO DISCHARGE COUNSEL AND FOR SUBSTITUTION OF COUNSEL, OR IN THE ALTERNATIVE, TO PROCEED PRO SE PENDING RETENTION OF NEW COUNSEL**

**INTRODUCTION**

Plaintiff Kelly Jenkins, appearing pro se for the limited purpose of these emergency filings, respectfully moves this Court pursuant to 28 U.S.C. § 1654, Local Civil Rule 83.2, and this Court's inherent authority over the supervision of attorneys practicing before it, for an order: (1) immediately discharging Dane Flesch as Plaintiff's counsel of record; (2) ordering the turnover of the complete

case file; (3) granting Plaintiff a reasonable period to retain new counsel; (4) ordering a refund of all unearned fees; and (5) noting counsel's conduct on record . In support thereof, Plaintiff states as follows:

## STATEMENT OF FACTS

**1.** This is a civil rights action brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 for retaliation and harassment suffered by Plaintiff, a teacher, after she reported and opposed the sexual harassment of minor students by another teacher employed by Defendant Cache Public Schools, Independent School District No. 1.

**2.** On or about November 20, 2025, Plaintiff retained Dane Flesch to represent her in this matter and paid a retainer of Fifteen Thousand Dollars ($15,000.00), consisting of a $14,000.00 cashier's check and $1,000.00 in cash. Approximately $7,742.00 of that retainer remains in Counsel's client trust account.

**3.** After receiving Plaintiff's $15,000.00 retainer, Counsel did not contact Plaintiff for a period of 19 weeks, approximately 132 days. Counsel personally initiated no phone calls, sent no emails, provided no case updates, and made no effort whatsoever to communicate with his client about the status of her federal civil rights case during this entire period until March 26, 2026.

**4.** Plaintiff was forced to initiate contact with Counsel approximately twelve (12) days ago, March 24, 2026,  simply to schedule an appointment to discuss  the case—a case for which she had already paid $15,000.00 in legal fees.

**5.** March 26, 2026 on the day of the deadline for the draft of the Joint Status Report ("JSR"), Counsel contacted Plaintiff by telephone. During that call, Counsel informed Plaintiff that the JSR was due in one week. Counsel had previously stated during initial consultation that plaintiff may easily spend $100,000.00 on trial—then again on March 26, 2026 $50,000.00 for fees was mentioned—despite $7,742.00 of Plaintiff's retainer still sitting in his trust account. The previous statement, made in the context of 19 weeks of total silence and abandonment, was calculated to intimidate Plaintiff and discourage her from continuing to pursue her claims.

**6.** The JSR was required to be provided to all parties no later than seven (7) days before the filing deadline, March 26, 2026, pursuant to applicable rules and/or stipulation. Counsel provided the JSR to Defense counsel timely. However, Counsel did **not** provide a copy of the JSR to his own client—Plaintiff—until approximately twenty four (24) hours before the filing deadline. Plaintiff contacted Counsel on April 3, 2026 noting that counsel wanted Plaintiff to review the Plaintiff's contentions only. Plaintiff having no understanding of a JSR or any legal guidance from counsel was not given a meaningful opportunity to review, comment on, or object to the contents of the document being filed on her behalf.

**7.** Of the twelve (12) defense contentions contained in the filed JSR, Counsel briefly mentioned approximately four (4) to Plaintiff by telephone—and even those were not clearly identified to Plaintiff as formal contentions that would be filed in the JSR. The remaining eight (8) defense contentions—which contain false allegations were filed without Plaintiff's knowledge or consent.

**8.** Counsel never informed Plaintiff of her right to object to any or all of the defense contentions prior to filing. Counsel failed to object to any of the defense contentions on Plaintiff's behalf. The unobjected-to false defense contentions now stand in the filed JSR and pose a grave risk of prejudicing every subsequent stage of this litigation—including the scheduling order, the scope and course of discovery, dispositive motions, and trial

**9.** On Friday April 3, 2026], at 5:21 PM—before filing the JSR—Counsel sent Plaintiff a draft "Exit Strategy" motion to withdraw as counsel. The draft motion cited "Plaintiff's failure to effectively communicate" as grounds for withdrawal and stated Counsel's intention to file it with this Court  today on Monday April 6, 2026.

**10.** The stated basis for withdrawal—"Plaintiff's failure to effectively communicate"—is a fabrication. It was Counsel who failed to communicate with his client for 19 weeks after receiving a $15,000.00 retainer. It was Counsel who forced Plaintiff to initiate contact. It was Counsel who withheld the JSR from Plaintiff until it was too late for meaningful review and it was Counsel who prepared a self-serving withdrawal motion designed to shift blame to the client he had abandoned.

**11.** The chronology of Counsel's conduct is not merely negligent—it is suggestive of a deliberate pattern of sabotage designed to engineer Counsel's own withdrawal while leaving Plaintiff's case in a fatally compromised posture:

> **(a)** Counsel accepted a $15,000.00 retainer and then abandoned all communication with Plaintiff for 19 weeks;

**(b)** Counsel filed a Joint Status Report containing false defense contentions without affording Plaintiff adequate review or any opportunity to object;

**(c)** Counsel failed to object to any of the twelve defense contentions on Plaintiff's behalf, allowing false allegations to stand unchallenged in the court record;

**(d)** Counsel prepared a motion to withdraw—styled as an "Exit Strategy"—blaming Plaintiff for "ineffective communication," timed to be filed immediately after the JSR, thereby creating a narrative in which Plaintiff appears to be the problem;

**(e)** Counsel mentions legal fees upward of $100,000.00 and then again of $50,000.00 while holding $7,7432.00 in trust, apparently to intimidate Plaintiff into either abandoning her case or acquiescing to withdrawal.

## ARGUMENT

### A. Plaintiff Has an Absolute Right to Discharge Counsel

12. It is well-settled that a client has the absolute right to discharge her

attorney at any time, with or without cause. *Augustson v. Linea Aerea Nacional-Chile S.A.*, 76 F.3d 658, 663 (5th Cir. 1996); *Kriegsman v. Kriegsman*, 150 N.J. Super. 474, 375 A.2d 1253 (App. Div. 1977). The attorney-client relationship is one of utmost trust and confidence, and when that relationship has irretrievably broken down, the client must be permitted to seek new representation. *See Maples v. Thomas*, 565 U.S. 266, 281 (2012) ("A client cannot be charged with the acts or omissions of an attorney who has abandoned [her].").

**13.** Here, the attorney-client relationship has not merely broken down—it was systematically destroyed by Counsel's own conduct. 19 weeks of silence, followed by a rushed and deficient JSR filing, followed by a preemptive withdrawal motion blaming the client, constitutes a complete abdication of Counsel's professional responsibilities. Plaintiffs should not be compelled to continue this relationship for a single additional day.

## B. Counsel's Conduct Violates the Oklahoma Rules of Professional Conduct

**14.** Counsel's conduct violates multiple provisions of the Oklahoma Rules of Professional Conduct, including but not limited to:

(a) **Rule 1.3 (Diligence):** "A lawyer shall act with reasonable diligence and promptness in representing a client." 19 weeks of total silence is the antithesis of diligent representation.

(b) **Rule 1.4 (Communication):** "A lawyer shall keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information." Counsel violated

this rule completely and continuously.

**(c) Rule 1.2(a) (Scope of Representation):** "A lawyer shall abide by a client's decisions concerning the objectives of representation." Counsel filed the JSR without Plaintiff's full informed consent or full participation. **(d) Rule 1.15 (Safekeeping Property):** To the extent Counsel holds $7,742.00 of Plaintiff's retainer in trust, Counsel is obligated to return unearned fees promptly upon termination of the representation.

**(e) Rule 8.4(c) and (d) (Misconduct):** The pattern of conduct described herein—including the filing of a JSR without client review and understanding, the failure to object to false contentions, and the preparation of a self-serving withdrawal motion blaming the client—constitutes conduct involving dishonesty, deceit, and conduct prejudicial to the administration of justice.

## C. The Court Should Not Be Misled by Counsel's Anticipated Withdrawal Motion

15. Plaintiff is aware that Counsel intends to file a motion to withdraw on Monday April 6, 2026. That motion, styled as an "Exit Strategy," will cite "Plaintiff's failure to effectively communicate" as its basis. The Court should view that anticipated motion with extreme skepticism. The factual record demonstrates that every alleged "failure to communicate" was caused by Counsel's own abandonment of his client. Plaintiff files this motion first—before Counsel can file his—to ensure the Court has the full and accurate picture, not the self-serving narrative Counsel has prepared.

## D. The Court Should Grant Plaintiff a Reasonable Period to Retain New Counsel

16. Plaintiff is aware that courts are reluctant to allow substitution of counsel close to deadlines and that such requests can be viewed as dilatory. *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 650 (9th Cir. 1997). Plaintiff emphasizes that this emergency was not of Plaintiff's making. It is the totality of Counsel's misconduct—not Plaintiff's choice or any lack of diligence by Plaintiff—that has created this crisis. Plaintiff has demonstrated her commitment to this case by paying a $15,000.00 retainer and by attempting to communicate with Counsel despite his 19 weeks of silence. Plaintiff respectfully requests thirty (30) days to retain new counsel. This period is reasonable given the complexity of the case and the need for new counsel to review the complete case file.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kelly Jenkins respectfully requests that this Court enter an Order:

1. Immediately discharging Dane Flesch of Brown & Flesch as counsel of record for Plaintiff in this action;

2. Ordering Dane Flesch to turn over the complete case file, including all

documents, correspondence, notes, research, and work product, to Plaintiff's new counsel when obtained;

3. Granting Plaintiff thirty (30) days from the date of the Order to retain new counsel and for new counsel to enter an appearance;

4. Relieving Dane Flesch from all further responsibility in this action effective upon entry of the Order;

5. Ordering Dane Flesch to refund all unearned fees to Plaintiff within ten (10) days of the date of the Order, consistent with the Oklahoma Rules of Professional Conduct, Rule 1.16(d);

6. Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

*Kelly Jenkins    April 6, 2026*

Kelly Jenkins, Pro Se
2383 SW Combs Rd
Cache, Ok 73527
580-512-6628
kellyjenkins14@gmail.com